# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| Suzanne Young, | ) |
| Plaintiff, | ) Civil Action No.: 0:18-cv-01601-JMC |
| v. | ) **ORDER AND OPINION** |
| AMISUB of South Carolina, Inc. d/b/a Piedmont Medical Center, | ) |
| Defendant. | ) |

This matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report") filed on August 17, 2018. (ECF No. 12.) The Report addresses Defendant AMISUB of South Carolina, Inc. d/b/a Piedmont Medical Center's ("Defendant") Motion to Compel Arbitration and to Dismiss or Stay All Claims ("Motion to Compel Arbitration") (ECF No. 6) and recommends that the court grant Defendant's Motion to Compel Arbitration and retain jurisdiction over the parties for all matters relating to this action. (*Id.* at 10-11.) For the reasons set forth herein, the court **ACCEPTS** the Magistrate Judge's Report, **GRANTS** Defendant's Motion to Compel Arbitration, and **DISMISSES** the action without prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Report sets forth the relevant facts and legal standards which this court incorporates without a full recitation. (*Id.* at 2-3.) As brief background, around April 2011, Plaintiff Suzanne Young ("Plaintiff") was hired by Defendant as its Director of Imaging and Pain Services. (ECF No. 1-1 at 6; ECF No. 6 at 1; ECF No. 12 at 2.) Shortly after being hired, on April 12, 2011, Plaintiff signed a document titled "Acknowledgement," which includes provisions relating to

1

arbitration ("Arbitration Agreement"). (ECF No. 6-1 at 1; ECF No. 14-1 at 18.) In pertinent part, the Arbitration Agreement states:

> *Except to the extent that any applicable collective bargaining agreement provided otherwise*, I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration of any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenent. I understand that final and binding arbitration will be the sole and exclusive remedy of any such claim or dispute against Tenent or its parent, subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to the use of arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process. I also agree that such arbitration will be conducted before an experienced arbitrator chosen by me and the Company, and will be conducted under the Federal Arbitration Act and the procedural rules of the American Arbitration Association ("AAA").
>
> I further acknowledge that in exchange for my agreement to arbitrate, the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration, and that the Company further agrees that if I submit a request for binding arbitration, my maximum out-of-pocket expenses for the arbitrator and the administrative cost of the AAA will be an amount equal to one day's pay (if I am an exempt employee) or eight times my hourly rate of pay (if I am a non-exempt employee) or a mandated cap, if lower, and that the Company will pay all of the remaining fees and administrative costs of the arbitrator and the AAA. I further acknowledge that this mutual agreement to arbitrate may not be modified or rescinded except in writing by both me and the Company.

(ECF No. 6-1 at 1.) On or about June 18, 2017, Defendant terminated Plaintiff. (ECF No. 1-1 at 9.) On May 25, 2018, Plaintiff filed suit against Defendant in the Court of Common Pleas for York County, South Carolina. (*Id.* at 5-13.) In her Complaint, Plaintiff alleges that Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (*Id.* at 9-11.)

On June 12, 2018, Defendant removed this matter from state court to federal court. (ECF No. 1.) On June 14, 2018, Defendant filed its Motion to Compel Arbitration. (ECF No. 6.) On June 28, 2018, Plaintiff filed her Memorandum of Law in Opposition to Defendant's Motion

("Memorandum"). (ECF No. 10.) On July 5, 2018, Defendant replied to Plaintiff's Memorandum. (ECF No. 11.)

After reviewing the filings of the parties, the Magistrate Judge filed a Report on August 17, 2018. (ECF No. 12.) In the Report, the Magistrate Judge determined that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applied to Plaintiff's claims against Defendant because "Defendant provided the signed Agreement containing the arbitration provision[,]" "Defendant's economic activity has a nexus to interstate commerce[,]" and "Plaintiff . . . failed to show [that] the arbitration provision is unconscionable." (*Id.* at 6-10.) Additionally, the Magistrate Judge declined to find that Plaintiff waived her substantive rights under Title VII. (*Id.* at 10.) The Report ultimately recommends that the court grant Defendant's Motion to Compel Arbitration and dismiss the action. (*Id.* at 10-11.) The Report also advises the court to retain jurisdiction over the parties for all matters relating to this action. (*Id.* at 11.)

The parties were apprised of the opportunity to file specific objections to the Magistrate Judge's Report by August 31, 2018. (*Id.* at 12.) On August 31, 2018, Plaintiff filed her Objection to the Report. (ECF No. 14.) In her Objection, Plaintiff argues that the Arbitration Agreement lacks consideration to form a valid contract, the Arbitration Agreement is unconscionable, and anti-discrimination statutes should not be subject to arbitration because "courts have the final responsibility for enforcing discrimination claims." (*Id.* at 2-4.) Defendant replied to Plaintiff's Objection on September 11, 2018. (ECF No. 15.) Defendant maintains that there was sufficient consideration for the Arbitration Agreement, the Magistrate Judge properly held that Plaintiff has not shown that the Arbitration Agreement is unconscionable, and discrimination claims are routinely subject to arbitration. (*Id.* at 1-5.) Plaintiff did not respond to Defendant's contentions, which makes the Report ripe for review.

3

## II. STANDARD OF REVIEW

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court, and the recommendation has no presumptive weight. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The responsibility to make a final determination remains with the court. *Id.* at 271. As such, the court is charged with making *de novo* determinations of those portions of the Report and Recommendation to which specific objections are made. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). Furthermore, a failure to file specific written objections to the Report results in a party's waiver of the right to appeal from the judgment of the court based upon such recommendation. 28 U.S.C. § 636(b)(1). Thus, the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## III. DISCUSSION

In her Objection, Plaintiff presents three arguments to the Magistrate Judge's Report. (*See* ECF No. 14 at 1-5.) First, Plaintiff maintains that the Report is "silent about the sufficiency of consideration" in the Arbitration Agreement, and consideration must be examined because she denies that "a valid arbitration agreement . . . was ever formed[.]" (*Id.* at 1-2.) Second, Plaintiff continues to argue, under the totality of the circumstances, that the Arbitration Agreement is unconscionable because it "granted her no meaningful choice" and contained "non-negotiable terms." (*Id.* at 3.) Lastly, Plaintiff forcefully submits that "Congress clearly intended to enable courts to have the final responsibility for enforcing discrimination claims, and thus, deferral to arbitration is inconsistent with the original intent of Congress." (*Id.* at 4.) The court will consider each of Plaintiff's objections in turn.

A. **Consideration for the Arbitration Agreement**

Plaintiff first argues that "the Report is silent about the sufficiency of consideration" relating to the Arbitration Agreement." (*Id.* at 2.) Specifically, Plaintiff requests the court to examine whether there was sufficient consideration within the Arbitration Agreement. (*Id.*) While the Report neglected to give attention to the Arbitration Agreement's consideration (*see* ECF No. 12 at 5-6), Plaintiff's argument is not successful on this ground.

Under section 2 of the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Additionally, under section 4 of the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002).

In order to compel arbitration, a moving party must demonstrate the following: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (quoting *Adkins*, 303 F.3d at 500-01). When determining whether there

is a valid arbitration agreement between two parties, a federal court is required to apply state law principles governing contracts.[1] *See Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) ("We apply ordinary state law principles governing the formation of contracts, including principles concerning the 'validity, revocability, or enforceability of contracts generally.'" (quoting *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005))). *See also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). If a valid arbitration agreement exists under state law, a federal court has "no choice but to grant a motion to compel arbitration." *Adkins*, 303 F.3d at 500. In this case, the court is required to look to principles of South Carolina contract law. *See Weckesser v. Knight Enters. S.E., LLC*, 735 F. App'x 816, 819-21 (4th Cir. 2018) (applying South Carolina law when interpreting the validity of an arbitration provision).

Under South Carolina law, a valid contract must include the following elements: (1) offer; (2) acceptance; and (3) valuable consideration. *See Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 166 (S.C. 2003) ("The necessary elements of a contract are an offer, acceptance, and valuable consideration."). "Valuable consideration may consist of 'some right, interest, profit, or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other.'" *Hennes v. Shaw*, 725 S.E.2d 501, 505 (S.C. Ct. App. 2012) (quoting *Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship*, 503 S.E.2d 184, 186 (S.C. Ct. App. 1988)).

---

[1] Plaintiff abandoned her previous theory that a dispute between a healthcare professional and a medical center does not involve interstate commerce. (*Compare* ECF No. 10 at 3-5, *with* ECF No. 14 at 1-5.) Plaintiff's Objection only contests whether the Arbitration Agreement possesses sufficient consideration under South Carolina law. (ECF No. 14 at 1-3.) As such, the court only examines whether the Arbitration Agreement passes legal muster under South Carolina's legal principles governing contracts and declines, in the absence of a specific objection from Plaintiff, to take any further analysis required under the FAA. *See Thomas v. Arn*, 474 U.S. 140, 151 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). *See generally Nichols v. Colvin*, 100 F. Supp. 3d 487, 497 (E.D. Va. 2015) ("The purpose of magistrate review is to conserve judicial resources.").

Additionally, "[i]t has long been a paradigm of South Carolina law that when a contract signed by one party only is accepted by the other party, it becomes binding upon both just as if it were signed by both." *Jaffe v. Gibbons*, 351 S.E.2d 343, 346 (S.C. Ct. App. 1986).

Upon review of the Arbitration Agreement, it is clear that Plaintiff signed the contract on April 12, 2011, and Defendant accepted it by employing Plaintiff until on or about June 18, 2017. (ECF No. 1-1 at 9; ECF No. 6-1 at 1.) Therefore, under South Carolina law, the Arbitration Agreement is binding upon both parties, and the court's inquiry should end here. *See Jaffe*, 351 S.E.2d at 346. Nevertheless, the court will still examine whether there was sufficient consideration between the parties to have an enforceable contract.

In order to have valuable consideration between Plaintiff and Defendant, there must have been a benefit to one party and a detriment to the other. *See Hennes*, 725 S.E.2d at 505. Upon review of the Arbitration Agreement, there is sufficient consideration between the parties because Plaintiff, presumably to her detriment, is required to submit "any and all claims" to arbitration and "forego any right . . . to a jury trial[,]" while Defendant, conceivably to its benefit, is able to avoid court proceedings in the event of a dispute. (*See* ECF No. 6-1 at 1.) Moreover, Defendant, to its detriment, is also required to submit "all claims and disputes" that it may have with Plaintiff to binding arbitration, which is likely a benefit to Plaintiff since Defendant is subject to the same commitment as Plaintiff. (*Id.*) Thus, there is sufficient consideration between the parties because there is an exchange of benefits and detriments as it relates to arbitration. *See Hennes*, 725 S.E.2d at 505.

In addition to the foregoing analysis, the court must consider the approach of courts interpreting arbitration provisions under South Carolina law. In comparison to the Arbitration Agreement before this court, South Carolina courts have found that similar arbitration provisions

are legally binding because they have sufficient consideration. *See Towles v. United Healthcare Corp.*, 524 S.E.2d 839, 845 n.4 (S.C. Ct. App. 1999) ("Although Towles does not raise the issue, we note Towles's continued employment constituted sufficient consideration to render the Acknowledgement legally binding." (citations omitted)). Interpreting South Carolina law, the United States Court of Appeals for the Fourth Circuit has stated: "A mutual promise to arbitrate constitutes sufficient consideration for [an] arbitration agreement." *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) (citing *Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 300 (1996)). As noted above, Defendant and Plaintiff have mutually promised to arbitrate any employment-related dispute (ECF No. 6-1 at 1), which is valuable consideration under South Carolina law. *Id.* Most recently, the South Carolina Court of Appeals, applying South Carolina law, has determined that Defendant's Arbitration Agreement possesses sufficient consideration in order to form a valid contract. *See Marzulli v. Tenet S.C., Inc.*, No. 2015–002363, 2018 WL 1531507, at *1, *4 (S.C. Ct. App. Mar. 28, 2018) ("We also disagree with the circuit court that the Agreement lacked consideration. Marzulli signed the Agreement about a month after she started work, and we have held continued employment sufficient consideration to support arbitration agreements."). Therefore, Defendant's Arbitration Agreement does not lack sufficient consideration. As Plaintiff's objection is plainly at odds with the law, it is overruled. *See id*; *Towles*, 524 S.E.2d at 845 n.4.

**B. The Unconscionability of the Arbitration Agreement**

Plaintiff continues to maintain, relentlessly, that the Arbitration Agreement is an "unconscionable contract of adhesion because it granted her no meaningful choice and was offered to her on a 'take-it-or-leave-it' basis with non-negotiable terms." (ECF No. 14 at 3.) Plaintiff requests the court to consider whether the Arbitration Agreement is unconscionable under "the

8

totality of the circumstances." (*Id.*) Plaintiff misses the mark in this regard, and her argument is in stark tension with a recent decision from the South Carolina Court of Appeals.

In order to show that an arbitration provision is unconscionable, Plaintiff is required to show the following under South Carolina law[2]: "(1) she lacked a meaningful choice as to whether to arbitrate because the [Arbitration] Agreement's provisions were one-sided, and (2) the terms were so oppressive no reasonable person would make them and no fair and honest person would accept them." *Marzulli*, 2018 WL 1531507, at *3 (citing *Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 668 (S.C. 2007)). Plaintiff is required to show both prongs in order to invalidate the Arbitration Agreement. *See Simpson*, 644 S.E.2d at 668 ("In South Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, *together with* terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." (emphasis added)). In *Marzulli*, the South Carolina Court of Appeals held that the Arbitration Agreement, the same one at issue before this court, is not oppressive and one-sided under South Carolina law. *Id.* at *4. Therefore, regardless of whether Plaintiff can show that she lacked a meaningful choice in whether to arbitrate, she cannot show that the Arbitration Agreement is unconscionable because she cannot meet the second prong as already decided by the *Marzulli* court. *Id.* As such, Plaintiff's objection is overruled.

## C. Anti-Discrimination Statutes and Arbitration Under the FAA

Lastly, Plaintiff submits that "Congress clearly intended to enable courts to have the final responsibility for enforcing discrimination claims, and thus, deferral to arbitration is inconsistent

---

[2] Under the FAA, an arbitration provision may be invalidated if it can be rendered unenforceable under applicable state law. *See Munoz v. Green Tree Fin. Corp.*, 542 S.E.2d 360, 364 (S.C. 2001) ("General contract principles of state law apply to arbitration clauses governed by the FAA." (citation omitted)).

with the original intent of Congress." (ECF No. 14 at 4.) While this is an interesting and novel argument before the court, it is wholly without merit and contrasts with well-established case law.

Notwithstanding the ongoing debate among legal commentators regarding the use of legislative intent and history,[3] courts routinely examine it, whether rightly or wrongly, when presented with certain legal questions. *See Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council, Inc.*, 467 U.S. 837, 862-64 (1984). *See also Hillman v. I.R.S.*, 263 F.3d 338, 342-43 (4th Cir. 2001); *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000). The court need not address this debate because the United States Supreme Court has already handed down significant decisions in which employees were forced to arbitrate their discrimination claims when there was a valid agreement between the employee and employer.[4] *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 29 (1991) ("Gilmer also argues that compulsory arbitration is improper because it deprives claimants of the judicial forum provided for by the ADEA. Congress, however, did not explicitly preclude arbitration or other nonjudicial resolution of claims, even in its recent amendments to the ADEA."). *See generally Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123

---

[3] *Compare* Frank H. Easterbrook, Text, History, and Structure in Statutory Interpretation, 17 HARV. J.L. & PUB. POL'Y 61, 62 (1994) ("Wait. Am I not a notorious opponent of legislative history? That is indeed my position . . . ."), *and* Antonin Scalia, Judicial Deference to Administrative Interpretations of Law, 1989 DUKE L.J. 511, 517 ("And to tell the truth, the quest for 'genuine' legislative intent is probably a wild-goose case anyway."), *with* Jerry Mashaw, *As If Republican Interpretation*, 97 YALE L.J. 1685, 1686 (1988) ("Any theory of statutory interpretation is at base a theory about constitutional law. It must at the very least assume a set of legitimate institutional roles and legitimate institutional procedures that inform interpretation."), *and* Jane S. Schacter, Metademocracy: The Changing Structure of Legitimacy in Statutory Interpretation, 108 HARV. L. REV. 593, 593-94 (1995) ("To carry out its [interpretive] task, the court must adopt—at least implicitly—a theory about its own role by defining the goal and methodology of the interpretive enterprise and by taking an institutional stance in relation to the legislature.").

[4] "[A] lower court generally is 'bound to carry the mandate of the upper court into execution . . . .'" *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)).

(2001) ("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law . . . ."); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. . . . Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."). Additionally, the Fourth Circuit has unequivocally stated that discrimination statutes are subject to arbitration under the FAA and forcefully rejected Plaintiff's argument.[5] *See Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999) ("The EEOC as amicus curiae contends that employees cannot agree to arbitrate Title VII claims in predispute agreements. We disagree. The Supreme Court has made it plain that judicial protection of arbitral agreements extends to agreements to arbitrate statutory discrimination claims. . . . The EEOC argues that in passing the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, Congress evinced an intent to prohibit predispute agreements to arbitrate claims arising under Title VII. This circuit, however, has already rejected this argument." (citing *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 881-82 (4th Cir. 1996))). Based on the foregoing, Plaintiff's objection is overruled because it has been emphatically rejected by the Supreme Court and the Fourth Circuit, and is therefore without legal merit. *See Circuit City Stores*, 532 U.S. at 123; *Gilmer*, 500 U.S. at 29; *Hooters of Am.*, 173 F.3d at 937.

---

[5] "Coherent and consistent adjudication requires respect for the principle of stare decisis and the basic rule that the decision of a federal circuit court of appeals left undisturbed by United States Supreme Court review is controlling on the lower courts within the circuit." *See Condon v. Haley*, 21 F. Supp. 3d 572, 587 (D.S.C. 2014).

## IV. CONCLUSION

After a thorough review of the Magistrate Judge's Report (ECF No. 12) and Plaintiff's Objection (ECF No. 14), the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 12), **GRANTS** Defendant's Motion to Compel Arbitration and to Dismiss (ECF No. 6), and **DISMISSES** the action without prejudice (ECF No. 1).[6]

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

November 1, 2018
Columbia, South Carolina

---

[6] In accordance with prior decisions from this court, the court dismisses the action as opposed to merely staying the proceedings. *See Willard v. Dollar Gen. Corp.*, No. 3:17-cv-00675, 2017 WL 4551500, at *4 (D.S.C. Oct. 12, 2017); *Cox v. Assisted Living Concepts, Inc.*, No. 6:13–00747–JMC, at *7 (D.S.C. Mar. 18, 2014); *Fleetwood Transp. Corp. v. Packaging Corp. of Am.*, No. 6:10–01219–JMC, 2012 WL 761737, at *5 (D.S.C. Mar. 8, 2012).